IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-111

No. 485PA19

Filed 4 November 2022

STATE OF NORTH CAROLINA

v.

CASHAUN K. HARVIN

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b)[1] to review a divided decision of the Court of Appeals, 268 N.C. App. 572 (2019), vacating judgments entered on 8 May 2018 by Judge Phyllis M. Gorham in Superior Court, New Hanover County and ordering that defendant is entitled to a new trial. Heard in the Supreme Court on 11 May 2022.

*Joshua H. Stein, Attorney General, by Marissa K. Jensen, Assistant Attorney General, for the State-appellant.*

*Marilyn G. Ozer for defendant-appellee.*

MORGAN, Justice.

¶ 1     In this case we consider whether defendant Cashaun K. Harvin was wrongly denied his constitutional right to counsel when the trial court compelled him to proceed pro se to trial on multiple serious felonies, including first-degree murder. At

---

[1] As discussed in more detail herein, the State lost its appeal of right where a decision of the Court of Appeals includes a dissent as a result of the State's failure to timely give notice of appeal. N.C.G.S. § 7A-30(2) (2021).

the conclusion of the trial, defendant was found guilty of all charges. This Court's review of the record in this case does not support the trial court's determination that defendant's actions were sufficiently obstructive to constitute a forfeiture of defendant's right to counsel. Accordingly, defendant is entitled to a new trial, and we affirm the decision of the Court of Appeals which vacated the judgments entered upon defendant's convictions.

## I. Factual background and procedural history

### A. Defendant's alleged crimes, resulting indictments, and proceedings prior to defendant's trial date

¶ 2 The Court's resolution of the matters presented by this case is predicated primarily upon the facts and circumstances which occurred following defendant's arrest and during the pretrial proceedings in his case, and therefore, we present only a brief summary of the facts regarding defendant's alleged serious crimes. The evidence at defendant's trial tended to show the following: On 2 February 2015, Tyler Greenfield arranged to purchase marijuana from the victim in this case, Robert Scott, Jr., as a pretext for Greenfield and defendant to rob Scott. Scott instructed Greenfield to come to Scott's apartment for the drug transaction and was surprised when defendant arrived with Greenfield. Nonetheless, Scott allowed both Greenfield and defendant to enter the living room of Scott's home. Once inside the residence, Greenfield produced a handgun and demanded money from Scott.

¶ 3 Unbeknownst to defendant and Greenfield, Scott's girlfriend Azariah Brewer

had been resting in a bedroom of the apartment. When she overheard the confrontation taking place in the living room, Brewer retrieved a gun. When defendant, armed with a handgun, entered the bedroom where Scott kept a safe, defendant saw Brewer and yelled, "She has a gun!"[2] Greenfield ordered Brewer to bring her gun into the living room and threatened to shoot Scott if Brewer resisted. Brewer complied and placed her gun onto a coffee table in the living room. Scott then attempted to grab the gun from the coffee table, at which point defendant and Greenfield both began shooting, ultimately firing twelve rounds of ammunition in total. Scott was able to shoot at least once, striking Greenfield. Scott and Brewer were both shot several times, and Scott died from his injuries.

¶ 4    Defendant, who was seventeen years of age, was summoned from his high school classroom and arrested on 6 February 2015. Attorney Bruce Mason was appointed as defendant's counsel on 9 February 2015. On 26 May 2015, defendant was indicted on charges of first-degree murder, attempted first-degree murder, attempted robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury. On 25 July 2016, Attorney Mason withdrew due to circumstances unrelated to defendant. During his approximately eighteen months of representation of defendant, Mason made three filings: a discovery motion on or

---

[2] During the alleged robbery, Greenfield accidentally "pocket-dialed" Scott on a cellular telephone, and Scott's voicemail recorded portions of the alleged robbery as well as the killing of Scott.

about 18 February 2015, an objection to joinder of defendant's and Greenfield's charges, and a motion to substitute counsel on 25 July 2016 in which Mason's law partner Alex Nicely was recommended for appointment.

¶ 5        Upon Mason's withdrawal, attorney Alex Nicely was assigned as substitute counsel. During the nearly ten months that he represented defendant, Nicely filed numerous motions on defendant's behalf, including a motion to suppress certain statements that defendant made to law enforcement officers. On 31 October 2016, the New Hanover County grand jury indicted defendant on the same charges recounted above by means of the return of a superseding indictment. In December 2016, the State agreed to a sentence which included probation for a cooperating witness in the case in exchange for that witness's testimony at defendant's trial.

¶ 6        On 20 March 2017, after the conclusion of Greenfield's trial on charges arising from the robbery and killing of Scott and the shooting of Brewer,[3] the New Hanover County grand jury issued a second superseding indictment, charging defendant with the same four offenses included in the original indictment and the first superseding indictment—first-degree murder, attempted first-degree murder, attempted robbery

---

[3] Greenfield was tried separately and was found guilty by a jury of "first-degree murder based on the felony murder rule with the assault charge as the underlying felony. The jury also found [Greenfield] guilty of second-degree murder, but the trial court set that verdict aside. The jury found [Greenfield] not guilty of attempted first-degree murder and attempted robbery with a deadly weapon." *State v. Greenfield*, 375 N.C. 434, 438 (2020). On appeal, this Court granted Greenfield a new trial on all charges. *Id.* at 447. The record in Greenfield's case is before this Court.

with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury—along with additional charges of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. On 12 May 2017, the State offered defendant a plea agreement which, if defendant had accepted it, would have potentially resulted in defendant serving a sentence of 144 to 185 months in prison. Defendant rejected the plea offer. On the same date of 12 May 2017, Nicely withdrew as defense counsel due to circumstances unrelated to defendant, and the trial court then appointed attorney J. Merritt Wagoner to represent defendant. The State announced that it was ready to proceed with the trial of defendant and that it had hoped to schedule the matter for the 5 June 2017 trial calendar; however, the State and the trial court agreed that in light of defendant's new counsel just having been appointed, such a trial date of 5 June 2017 was not realistic and the parties looked instead to an administrative calendar date of 14 July 2017 which focused on pending murder cases.

¶ 7     On 28 September 2017, Wagoner filed a motion to withdraw as defense counsel, stating that defendant had asked Wagoner to withdraw and asserting that "the attorney client relationship with this defendant has been irreparably severed."[4] Wagoner's motion to withdraw was granted, and Shawn Robert Evans was

---

[4] Wagoner never filed any motions on behalf of defendant during Wagoner's representation of defendant.

immediately appointed as replacement counsel on 28 September 2017 to represent defendant. On 8 December 2017, Evans filed a motion seeking to withdraw as defendant's attorney, relating that defendant had verbally fired Evans on that date and representing that there had "been a complete breakdown of the attorney-client relationship" with defendant.

¶ 8     At a 12 December 2017 hearing before the Honorable Ebern T. Watson, III, Evans's motion to withdraw as defendant's court-appointed attorney was addressed. Defendant's trial had already been scheduled to begin on 28 January 2018. Evans explained to the trial court that defendant had expressed a desire to represent himself at trial; defendant confirmed Evans's statements to the trial court. Attorney Evans's motion to withdraw as defense counsel was allowed by the trial court. Defendant stated to the trial court that he desired assistance from standby counsel, and attorney Paul Mediratta was appointed by the trial court to serve in the role of standby counsel on behalf of defendant. Also at the 12 December 2017 hearing, the State registered its opposition to any postponement of defendant's 28 January 2018 trial date given that the case had already been pending for three years. However, the State did not divulge to the trial court that the State had elected to try Greenfield before bringing defendant's case to trial or that the State—the party which typically scheduled trial dates—had first noted that defendant's case was ready for trial in May 2017, some seven months previously. The trial court stated in open court that it did "not find at

this point in time that [defendant] has vacated his right to request counsel, nor that any of his actions have forfeited his opportunity to have assigned counsel."

¶ 9        On 28 December 2017, defendant, defendant's standby counsel Mediratta, and the State appeared before the trial court with Judge Phyllis M. Gorham again presiding. The State noted that defendant had asked previously to proceed pro se, but the State expressed concern that the mandatory inquiry set forth in N.C.G.S. § 15A-1242 regarding defendant's election to represent himself may not have been fully satisfied. Accordingly, the State asked that the trial court undertake the statutory inquiry. The trial court thereupon engaged in the statutorily required colloquy with defendant. Defendant indicated to the trial court that he understood the implications of representing himself[5] but expressed concern about the legal resources to which he had access while incarcerated and also noted that some of the charges pending against him were new and unfamiliar to defendant, citing defendant's past interactions with his appointed counsel. The State acknowledged that it intended to hand deliver updated discovery materials, including "the most recent indictment," to defendant during the hearing. In addition, defendant's standby counsel had alerted the State that defendant desired a continuance. Although the State opposed a continuance, the trial court nonetheless postponed defendant's trial date to 23 April 2018.

---

[5] Defendant also signed a waiver of counsel on 28 December 2017.

¶ 10      On 26 March 2018, defendant again appeared before the trial court, with the Honorable Joshua Willey presiding. The State informed the trial court that it had offered a plea agreement to defendant which would have resulted in a sentence of 144 to 192 months and defense countered with a possible sentence of "about ten years which would be 120 months" for defendant. Defendant rejected the State's plea offer and instead, moved to continue the trial.[6] The State suggested that the motion to continue the trial be considered by Judge Gorham as the assigned trial judge. Defendant then responded with a motion to have Judge Gorham removed from defendant's case due to Judge Gorham's alleged lack of impartiality in that she had previously presided over Greenfield's trial and therefore "has knowledge of disputable evidentiary facts of the proceeding." The trial court noted that it would be setting the recusal motion for consideration by Judge Gorham at a future date, at which point defendant expressed concern about the potential delay which would result:

> And I filed [the recusal motion], but it seems as though, like, they keep on telling me, well, that won't be heard until the trial date. Well, if I get a continuance, then that means I have to wait another additional six months or three months in order for that motion to be heard, and I don't see why it doesn't seem as though it's an appropriate time to hear it and, you know, the next week or next couple of days, like --

¶ 11      The State then stated that it would be ready to address the recusal motion in

---

[6] Apparently, the defense never made a formal counteroffer to the State's plea offer.

April 2018 and inquired about defendant's affirmative defenses. Defendant expressed

that he was "not all the way sure" about such defenses, and he then engaged in a

discussion with the trial court about affirmative defenses versus assertions of

innocence. At the conclusion of the exploration of these subjects regarding his trial

preparation, defendant stated that the trial court's rulings on his motions would

affect defendant's decisions on the manner in which to proceed in the case. Defendant

also renewed his previous request for internet access for purposes of legal research.

At this juncture, defendant addressed the trial court as follows:

> So my question is is it unreasonable for my request for
> proper learning tools, reviewing different cases, making
> reference to case laws, and allow me to look at things from
> a scientific perspective considering that the prosecutor has
> at least 5 years in training and law and at least 7 years in
> experience compared to my limited knowledge of 8 months,
> and I also ask that it may be considered that I recently been
> provided with a new statutory law book so anything prior
> was of old context, indeed irrelevant.
>
>     . . . .
>
>     It may be contested that my lawyer should provide
> me with these things. One, I'm not sure about what -- well
> one, if I'm not sure about what I am looking for, then a
> request cannot even be formulated and the purpose for the
> internet is for me to learn the law. It's not like I fully
> understand and it's possible for me to be oblivious to
> certain things pertaining to the law. Also, it is difficult for
> me to contact my lawyer most of the times -- and most of
> the times my messages don't get delivered so I don't receive
> a response, plus I have minimum outside support and even
> if my lawyer did decide to come see me every week, I would
> still have to wait when it may be something important at

the present moment.

> So considering my circumstances -- I mean, my circumstance and my lawyer's, it may be inconvenient for both of us. He cannot provide me assistance every day if needed and I need the assistance. I would still need him for updates, filing motions and as by-stand [sic] counsel in case I decide to step down from pro se and also for mediation purposes.

> So Your Honor, I ask that I am granted internet access for the purpose of research and because one of the disks requires the web and this was told for me to bring to your attention by the captain of New Hanover County.

¶ 12    The State responded that defendant "has the same resources" as the State, despite the State's acknowledgement that defendant was only able to conduct research using a non-internet-connected computer which could search "disks." The State further posited to the trial court that allowing internet access to defendant for purposes of legal research "sets a dangerous precedent regarding inmate access to resources that could be dangerous and, you know, have negative consequences in the community, as well as the jail." Defendant countered that he had to ask jail staff to print various items for him and that the lack of internet access limited defendant's ability, as a person without a college education, to research and understand matters relevant to his presentation.  The prosecutor then replied:

> The issue in my understanding is the deputies told me that he was asking for cases on self-defense, a topic, and I told them they can't do that. It's legal advice, basically providing cases on a certain topic. That's what a lawyer has to do and bailiffs are certainly not going to do that kind of

thing, so that's what I advised them not to do.

> As far as cases, Judge, go, if there's an issue of him getting a specific case, let us know what case, we'll make sure he gets it. We do have a list, the bailiff did send us all the books that he has been provided in the library there. One of which is a criminal procedure book, one is an arrest, search and seizure book, the statutes, the crimes book, the Prisoner Self-Help Litigation Manual, the Black's Law Dictionary, another copy of the arrest, search and investigation. Judge, he would have all the resources that a prosecutor would be using in preparation of a case, Judge. Again, the only issue of the internet access again is because the personnel needed to monitor that is just not available at the jail.

Without any comment regarding the State's candid acknowledgement that it was advising jail personnel about the type of legal research materials to provide to defendant or that the State was advised of defendant's access to specific research materials, the trial court denied defendant's request for internet access; additionally, the recusal motion and the trial continuance motion were continued until April 2018 in order to permit Judge Gorham to decide them.

¶ 13      On 3 April 2018—three weeks before defendant's scheduled trial date of 23 April 2018—defendant appeared before Judge Gorham and again raised his motion for her recusal—along with his motion for continuance of the trial date. Judge Gorham denied defendant's motion for Judge Gorham to recuse herself from defendant's case. With regard to his motion to continue the trial date, defendant represented that he "need[ed] more time to prepare for [his] case sufficiently."

Specifically, defendant noted his difficulty in contacting an investigator who was working on defendant's case and the delay that defendant experienced in obtaining a DVD[7] player and laptop computer in order to review portions of the discovery materials which had been provided to defendant by the State. Defendant further expressed his belief that "other lawyers [who had represented defendant previously in the matter], they were allowed to prepare [ ] for the case within no less than a year, but me, it seems as though like I'm being compelled to take upon, you know, the actions of defending myself when I have lack of resources and lack of knowledge," noting that he had received "5,000 pages of discovery." The State objected to another continuance of the trial, citing the length of time that defendant's case had already been pending, emphasizing that defendant would have five months to prepare for trial after receiving full discovery from the State, and asserting that the State would be prejudiced by a continuance due to the upcoming early June 2020 expiration of the probation period of the State's witness referenced earlier[8] who had been placed on supervised release with a condition that he testify truthfully in defendant's case. After raising the issue of inadequate access to potential expert witnesses and after expressing his frustration with his current investigator, defendant stated that he did not feel prepared to proceed to trial.

---

[7] This is an acronym for "digital video disc."

[8] The State described the witness as "the co-defendant who . . . allegedly drove . . . defendant and Tyler Greenfield away after the shooting."

¶ 14      At the conclusion of the hearing, the trial court denied defendant's motion to continue. At that point, Mediratta reminded the trial court that he had only been preparing for trial in his role as standby counsel and indicated that he would need several weeks to prepare if he was asked to assume full representation of defendant, also noting that defendant had asked for representation of counsel at the 26 March 2018 hearing before Judge Willey. The trial court responded that its "understanding from [defendant] today is that he still intends to represent himself . . . So unless he says that to me, that he does not want to represent himself anymore, then at that point I can appoint you, but that's not what [defendant] has said."

**B. Proceedings on defendant's trial date**

¶ 15      On 23 April 2018, Judge Gorham considered pretrial motions in defendant's case, beginning with defendant's pro se motion which was couched as an ineffective assistance of counsel claim:

> [DEFENDANT]: There are some things that I would like to address before the Court today before we proceed with, you know, the trial motions and stuff. I would like to address the situation of ineffective assistance of counsel, Your Honor.
>
> THE COURT: Let me stop you right there. You don't have an attorney so there is no ineffective assistance of counsel claim that you can raise.
>
> [DEFENDANT]: But having -- have I not -- is he not by stand [sic] counsel to provide me with assistance in things that I do not understand?

THE COURT: He is standby counsel but he is not your attorney. You have waived your right to all counsel.

[DEFENDANT]: Yes, ma'am.

THE COURT: So Mr. Mediratta is not your attorney, so what is your question?

[DEFENDANT]: So if it was the decision that he was able to replace me or take over the case, like, that's what I was told by Judge Watts[9] [sic]. He said if I wanted to, that he could take over my case at any time if I had decided.

THE COURT: If you decide that you no longer wish to represent yourself --

[DEFENDANT]: Yes, ma'am.

THE COURT: -- and you wish for counsel, that the Court has assigned a standby counsel to take over and try your case, that is correct.

[DEFENDANT]: Yes, ma'am.

THE COURT: But until that happens, standby counsel is not your attorney.

[DEFENDANT]: Yes, ma'am, I understand.
This is what I wanted to present to you, Your Honor, so you can in your discretion you can make a ruling upon it.

Defendant continued to demonstrate his confusion about Mediratta's potential ability

to "take over and represent" defendant if defendant determined at some point that

---

[9] Defendant apparently intended to refer to Judge Watson, who had presided over a hearing in defendant's case on 26 March 2018.

defendant could not adequately represent himself and also continued to express his dissatisfaction with Mediratta's honesty, knowledge, and commitment to assisting defendant in this matter.

The trial court then began to address defendant in a fashion typifying the colloquy required under N.C.G.S. § 15A-1242 when a defendant wishes to engage in self-representation, apparently possibly in response to Mediratta's comment at the close of the 3 April 2018 hearing which informed Judge Gorham that defendant had expressed a desire for representation to Judge Willey during the 26 March 2018 hearing:

> THE COURT: All right, let me ask you, Mr. Harvin, do you still wish to represent yourself at this trial?
>
> [DEFENDANT]: If it --
>
> THE COURT: Let me ask you some questions.
>
> [DEFENDANT]: Yes, ma'am.
>
> THE COURT: Are you able to hear and understand me?
>
> [DEFENDANT]: Yes, ma'am.
>
> THE COURT: Are you now under the influence of any alcohol, narcotics, drugs, medicines, pills, or any other substance?
>
> [DEFENDANT]: No, ma'am.
>
> THE COURT: How old are you?

> [DEFENDANT]:    21 at this time.
>
> THE COURT:    What is the highest grade you completed in school?
>
> [DEFENDANT]:    The 10th grade, Your Honor.
>
> THE COURT:    And what grade level can you read and write?
>
> [DEFENDANT]:    I would believe the 10th grade, Your Honor.
>
> THE COURT:    Do you presently suffer from any . . . mental or physical disabilities?
>
>          . . . .
>
> [DEFENDANT]:    Yes, ma'am.

The trial court and defendant then spent some time discussing defendant's representation that he had been diagnosed with attention deficit disorder while defendant was a student before returning to a discussion of the defendant's potential self-representation:

> THE COURT:    I'm just asking you questions about your representation, about whether or not you want to continue to represent yourself.
>
> [DEFENDANT]:    And what are, like, if I decide to proceed --
>
> THE COURT:    No, I just need to know, do you have any questions about what I just said to you about that?
>
> [DEFENDANT]:    Can you read the last part, please?

THE COURT:      I'm going to read the next question to you.

     *Do you still wish to waive your right to the assistance of an attorney and do you voluntarily and intelligently decide to represent yourself in this case?*

[DEFENDANT]:    *No, ma'am.*

THE COURT:      *You do not wish to represent yourself?*

[DEFENDANT]:    *No, ma'am.*

THE COURT:      *So what are you asking the Court for today?*

[DEFENDANT]:    Your Honor, what I was asking for initially was asking was that, like I said, I be provided with adequate by stand [sic] counsel and I was asking for more sufficient time to prepare my own defense. And what I was going to address was that *I don't feel like I should relinquish my rights as counsel,* I just need more time to prepare and understand the law.

    . . . .

THE COURT:      *The question I have for you today: Are you going to continue to represent yourself in your case?*

[DEFENDANT]:    *No, ma'am.*

THE COURT:      *What are you asking for?*

[DEFENDANT]:    *I'm asking for effective assistance of counsel.*

THE COURT:      *You are asking to be represented by an attorney?*

[DEFENDANT]:    *Yes, ma'am.*

> THE COURT:    *And you are asking this court to once again appoint an attorney to represent you in your case?*
>
> [DEFENDANT]*:    Yes, ma'am.*
>
> THE COURT:    *Mr. Harvin, you understand that if I choose to appoint an attorney to represent you --*
>
> [DEFENDANT]:    *Yes, ma'am.*
>
> THE COURT:    -- that it will be over from that point? You can't come back in here and say you don't like that particular attorney.
>
> [DEFENDANT]:    Yes, ma'am.
>
> THE COURT:    Because by law, you will have forfeited your right to have any attorney to represent you.
>         Do you understand that?
>
> [DEFENDANT]:    Yes, ma'am.
>
> THE COURT:    And you will be back in the same position that you are now.
>         Do you understand that?
>
> [DEFENDANT]: Yes, ma'am.

(Emphases added.)

¶ 17        Defendant then started to return to his ineffective assistance of counsel argument. The trial court reprised its explanation to defendant that defendant could not lodge a claim of ineffective assistance of counsel because he no longer had an attorney representing him. The trial court also reiterated the distinction between the status of representation by counsel and the status of proceeding pro se with standby

counsel. During the end of this exchange, defendant confirmed twice more that he did

not want to represent himself:

> THE COURT:     Do you understand that if you have an
> attorney appointed to represent you, it is your attorney
> who will try your case and not you?
>
> [DEFENDANT]:     But it's my right.
>
> THE COURT:     Listen to me.
>
> [DEFENDANT]:     Yes, ma'am.
>
> THE COURT:     *If an attorney is appointed to represent
> you, your attorney tries your case, you don't try your case.
> Are you willing to give up that right?*
>
> [DEFENDANT]:     *Yes, ma'am.*
>
> THE COURT:     *Because you have a right to represent
> yourself.*
>
> [DEFENDANT]:     Yes, ma'am.
>
> THE COURT:     Do you understand that?
>
> [DEFENDANT]:     Yes, ma'am.
>
> THE COURT:     *And you still choose to give up that right
> today?*
>
> [DEFENDANT]:     *Yes, ma'am.*

(Emphases added.) At this point in the pretrial hearing, defendant had informed the

trial court nine times that he did not want to represent himself at trial. The

prosecutor then asked to be heard, emphasizing that "defendant now wants an

attorney" and expressing his belief that defendant was "playing games with the system," restating his concern about the expiration of the probationary period of the State's witness, and representing that the State would be prejudiced by any delay caused by the appointment of another attorney to be defendant's counsel of record.

¶ 18          The trial court asked of Mediratta if he was prepared to proceed as defendant's counsel. Mediratta replied that he had only been preparing to serve at trial in his appointed role as standby counsel and that he was not ready to serve as counsel of record for trial, echoing his similar statement to the trial court during the 3 April 2020 hearing. After further discussion of defendant's concerns about defendant's ability to access information provided by the State in discovery, the trial court took a two-hour recess, during which the trial court contacted defendant's previous appointed attorneys who had been allowed to withdraw from the case and asked them to appear. Attorney Mason told the trial court that he had experienced a scheduling conflict that required defendant's case to be "transferred" to Mason's colleague, Attorney Nicely in July 2016, some sixteen months after Mason had been appointed to represent defendant. Attorney Nicely testified that he represented defendant for approximately ten months until May 2017, and that he withdrew due to his changing employment. Attorney Wagoner testified that he had represented defendant from May 2017 to September 2017 and had withdrawn at defendant's request. Attorney Evans testified that he had represented defendant from late September 2017 until

December 2017, at which point he also withdrew at the request of defendant.

¶ 19 After the evidentiary portion of the hearing, the State informed the trial court that the State believed that defendant's "willful actions" warranted a conclusion that defendant had forfeited his right to counsel, citing *State v. Boyd*, 200 N.C. App. 97 (2009), while specifically noting that defendant had "fired two different attorneys" and had requested counsel "on the day of trial." The State further asserted that defendant bore the burden of showing "good cause" in order for the trial court to permit defendant to "rescind" his previous waiver of counsel, citing *State v. Clark*, 33 N.C. App. 628 (1977) and *State v. Banks*, 250 N.C. App. 823 (2016) (unpublished), and emphasizing the issues of timing and delay as dispositive in determinations of forfeiture.

¶ 20 In responding to the State's depiction of his actions, defendant denied any attempt on his part "to frustrate" the trial court, while restating his position that he had not had sufficient time to prepare for trial to represent himself. The trial court first found that defendant was competent to proceed to trial and then concluded

> that [defendant] had no good cause as of today, the day of trial, to ask this [c]ourt for an attorney to represent him. That in fact this [c]ourt believes that based upon the defendant's actions from the time that . . . Wagoner was appointed to represent him on May 12, 2017; . . . Evans was appointed to represent him on September 28, 2017, the defendant requesting that both of these attorneys withdraw from representing him, finds that the defendant has forfeited his right to have an attorney to represent him at this trial; that his actions have been willful and that he

has obstructed and delayed these court proceedings.

> Therefore the [c]ourt finds that the defendant has forfeited his right to have an attorney represent him at this trial.

Upon the trial of this case, the jury returned verdicts of guilty on all of the offenses charged. Defendant was sentenced to life in prison with the possibility of parole for the first-degree murder conviction. For the remaining convictions, the trial court sentenced defendant to 200 to 254 months for attempted first-degree murder, 60 to 84 months for attempted robbery with a dangerous weapon, 60 to 84 months for assault with a deadly weapon with intent to kill inflicting serious injury, 60 to 84 months for robbery with a dangerous weapon, and 25 to 42 months for conspiracy to commit robbery with a dangerous weapon, with all terms of incarceration to run consecutively. Defendant appealed.

**C. Decision by the Court of Appeals**

Upon defendant's appeal to the Court of Appeals which was heard on 7 August 2019, he presented two arguments: (1) defendant's conduct at the trial court level was not egregious so as to permit the trial court to conclude that defendant had forfeited his constitutional right to the assistance of counsel, and (2) the trial court committed plain error in instructing the jury that the jury could find defendant guilty of all of the charges against him under the theory of acting in concert. In a decision from a divided Court of Appeals panel, the lower appellate court addressed only the first

issue in concluding that the trial court had erred in the trial court's determination that defendant had forfeited his right to counsel at trial and that, due to the deprivation of this constitutional right, defendant was entitled to a new trial. *State v. Harvin*, 268 N.C. App. 572, 573 (2019).

¶ 23        In reaching this result, the Court of Appeals majority first noted that, in addition to forfeiture—the loss of the constitutional right to counsel as a result of a defendant's misconduct—a defendant may elect to waive his right to the assistance of an attorney, so long as such decision is made "knowingly, intelligently, and voluntarily." *Id.* at 593. In order to ensure compliance with this constitutional mandate, the North Carolina General Assembly enacted N.C.G.S. § 15A-1242 which delineates the inquiry that a trial court must make of a defendant who has expressed the desire to proceed pro se and which provides that the failure to engage in the statutorily defined colloquy constitutes prejudicial error requiring the award of a new trial. *Id.* at 592–93. The majority of the lower appellate court observed that, at the 23 April 2018 hearing, the trial court had begun the statutory colloquy to permit waiver of counsel after defendant requested to replace his standby counsel, but that during defendant's exchange with the trial court during the execution of the statutory colloquy under N.C.G.S. § 15A-1242, defendant actually *invoked* his right to the assistance of counsel, "stating no fewer than *five* times that he did not wish to represent himself at trial." *Id.* at 595.

¶ 24    With specific regard to the issue of forfeiture, the Court of Appeals majority focused upon defendant's conduct in light of the forum's decision in *State v. Simpkins*, which held that a defendant who had engaged in extended discussions with the trial court and attempted to raise arguments that were not legally sound had not forfeited his right to counsel where the defendant had not been "combative or rude" or "did not intentionally delay the process," and whose actions, although causing evident frustration on the part of the trial court, merely "reflected his lack of knowledge or understanding of the legal process." *Id.* at 596 (quoting *State v. Simpkins*, 265 N.C. App. 325, 337 (2019), *aff'd*, 373 N.C. 530 (2020)). In the present case, the Court of Appeals majority similarly found that defendant had remained courteous in all of his interactions with the trial court albeit expressing confusion about the different roles of standby and primary counsel. *Id.* at 595. The decision further acknowledged that defendant had received assistance from a series of five court-appointed attorneys during the course of his case but emphasized that two of those attorneys had withdrawn for their own professional reasons rather than as a result of defendant's behest or defendant's conduct, while two other appointed attorneys withdrew "due to differences related to the *preparation* of [d]efendant's defense" and not because "[d]efendant was refusing to *participate* in preparing a defense." *Id.* Defendant's other appointed attorney—Mediratta—had been designated as standby counsel after defendant expressed his desire to represent himself on 12 December 2017. *Id.* at 593.

In light of these circumstances, the Court of Appeals majority determined that "[t]he trial court deprived [d]efendant of his constitutional right to counsel by concluding that he had forfeited this right," and thus awarded defendant a new trial. *Id.* at 596. As a result, the Court of Appeals did not address defendant's jury instruction challenge regarding the theory of acting in concert. *Id.*

The dissenting judge at the lower appellate court, while conceding that a defendant who has previously waived his right to counsel "should generally be able to withdraw his waiver by simply informing the trial court that he now wants to be represented," *id.* at 597 (Dillon, J., dissenting), opined that if the trial court's appointment of counsel under such circumstances "would require that the trial judge continue the trial to another term, our case law suggests that the defendant must generally show 'good cause,' " *id.* at 598 (first citing *State v. Blankenship*, 337 N.C. 543, 553 (1994), *overruled in part on other grounds by State v. Barnes*, 345 N.C. 184, 230 (1997); and then citing *State v. McFadden*, 292 N.C. 609, 616 (1977)). The dissent expressed the belief

> that the "good cause" standard and the "forfeiture" standard are generally treated similarly. That is, a *pro se* defendant's desire to be represented by counsel, in and of itself, generally constitutes "good cause" to justify a continuance. But the additional fact that defendant has been dilatory in making his request may support a finding that the defendant has failed to show "good cause" for a delay or otherwise has "forfeited" his right . . . to counsel where the invocation of the right would require a delay.

*Id.* at 599. In light of this approach, the dissent would have found no error by the trial court based on the trial court's statements during the 23 April 2018 hearing that defendant had "no *good cause*" to request appointment of counsel on the day of trial and that forfeiture of defendant's right to counsel was appropriate because his willful actions had "obstructed and delayed these court proceedings." *Id.* at 599–600 (emphasis omitted). The dissenting opinion found further support for the trial court's forfeiture of counsel determination based upon the dissent's perception that defendant had "admitted that he was only asking for his stand-by counsel to represent him as a way to delay the trial, as he made the request only moments after his request that his appointed stand-by counsel be replaced was denied and his subsequent motion to continue was denied." *Id.* at 602 (emphasis omitted).

¶ 26        Finally, upon consideration of defendant's argument that the trial court "plainly erred by instructing the jury that [d]efendant could be found guilty on a theory of acting in concert," the dissent simply offered that, upon review of the record, "the instruction was supported by the evidence," and even if the instruction had been erroneous, "such error did not rise to the level of plain error." *Id.* at 603.

¶ 27        On 19 December 2019, the State filed a motion for temporary stay, along with a petition for writ of supersedeas, pursuant to Rule 23(e) of the North Carolina Rules of Appellate Procedure. The motion for temporary stay was allowed by this Court on 20 December 2019, but the Court reserved determination of the petition for writ of

supersedeas until the State filed its projected notice of appeal based upon the dissenting Court of Appeals opinion, lodged pursuant to N.C.G.S. § 7A-30(2). But, on 6 February 2020, defendant moved this Court to lift the temporary stay, submitting that the Court of Appeals decision in this case was filed on 3 December 2019 and that the issue date for opinion mandates for the lower appellate court's 3 December 2019 opinions was 23 December 2019. The State's notice of appeal based upon the dissent in the Court of Appeals was due within fifteen days of the 23 December 2019 mandate—namely, by 7 January 2020—and as defendant observed, the State had not filed its notice of appeal as of the time of defendant's 6 February 2020 motion to lift the temporary stay. *See* N.C. R. App. P. 14(a). Accordingly, defendant asked this Court to refrain from suspending the North Carolina Rules of Appellate Procedure requiring the timely filing of a notice of appeal and to lift the temporary stay.

¶ 28      Later on the same day of 6 February 2020, the State filed a motion to maintain the stay, along with a petition for writ of certiorari in which the State requested review of the Court of Appeals decision. The State acknowledged that it had inadvertently missed the deadline for filing its notice of appeal, and cited Appellate Rule 21, which provides that the writ of certiorari "may be issued by the Supreme Court in appropriate circumstances to permit review of the decisions and orders of the Court of Appeals when the right to prosecute an appeal of right or to petition for discretionary review has been lost by failure to take timely action." *Id.* 21(a)(2). On

29 April 2020, this Court allowed the State's motion to maintain stay. The Court also allowed the State's petition for writ of certiorari on 29 April 2020.

## II. Analysis

## A. Precedent regarding waiver and forfeiture of the right to counsel

¶ 29 "The right to assistance of counsel is guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Sections 19 and 23 of the Constitution of North Carolina." *State v. McNeill*, 371 N.C. 198, 217 (2018) (quoting *State v. Sneed*, 284 N.C. 606, 611 (1974)). The right to counsel in criminal proceedings is not only guaranteed but is considered to be "fundamental in character." *Powell v. Alabama*, 287 U.S. 45, 70 (1932) (citations omitted). "This means more than simply that the State cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek this assistance." *Maine v. Moulton*, 474 U.S. 159, 170–71 (1985). "The core of this [Sixth Amendment] right has historically been, and remains today, 'the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial.'" *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)). Nonetheless, there are certain circumstances in which a criminal defendant may relinquish or lose his or her constitutional right to assistance of counsel.

¶ 30 One of the methods by which a criminal defendant may surrender the right to

assistance of counsel is through voluntary waiver. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981). North Carolina's General Assembly has enacted a carefully crafted statutory framework to ensure that a criminal defendant's right to counsel is protected and that its entrenchment can only be waived where the trial court is satisfied that the waiver is knowing, intelligent, and voluntary. *See* N.C.G.S. § 15A-1242 (2021). In the state courts of North Carolina, "[b]efore allowing a defendant to waive in-court representation by counsel, . . . the trial court must insure that constitutional and statutory standards are satisfied." *State v. Thomas*, 331 N.C. 671, 673 (1992). The first of these standards is that the waiver must be expressed "clearly and unequivocally." *Id.* at 673–74 (quoting *State v. McGuire*, 297 N.C. 69, 81 (1979)); *see also State v. Hutchins*, 303 N.C. 321, 339 (1981) ("Given the fundamental nature of the right to counsel, [this Court] ought not to indulge in the presumption that it has been waived by anything less than an express indication of such an intention."). The second standard is that "the trial court . . . must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to

in-court representation by counsel." *Thomas*, 331 N.C. at 674 (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)).

¶ 31        Section § 15A-1242 provides that:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

If the trial court abides by and complies with the dictates of N.C.G.S. § 15A-1242, then it "fully satisfies the constitutional requirement that waiver of counsel must be knowing and voluntary." *State v. Thacker*, 301 N.C. 348, 355 (1980).

¶ 32        Another means by which an accused may forego the constitutional right to counsel is the forfeiture of the right to legal representation based upon his or her conduct. "Forfeiture of counsel is separate from waiver because waiver requires a 'knowing and intentional relinquishment of a known right' whereas forfeiture 'results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.'" *State v. Schumann*, 257 N.C. App. 866, 879 (quoting *State v. Montgomery*, 138 N.C. App. 521, 524 (2000)),

*disc. rev. denied*, 370 N.C. 693 (2018). In other words, if a defendant has forfeited his or her right to counsel, then a trial court "is not required to determine, pursuant to [N.C.G.S.] § 15A-1242, that [the] defendant knowingly, understandingly, and voluntarily waived such right before requiring him to proceed *pro se.*" *State v. Leyshon*, 211 N.C. App. 511, 518, *appeal dismissed*, 365 N.C. 338 (2011); *see also United States v. Goldberg*, 67 F.3d 1092, 1100 (3d. Cir. 1995) ("Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.").

¶ 33        While the aforementioned appellate cases reflect an extensive line of case law generated by the Court of Appeals regarding forfeiture of the constitutional right to counsel, this Court's opportunity to address the issue of forfeiture has not been as robust. But in *State v. Simpkins*, 373 N.C. 530, 535 (2020), we held that, "in situations evincing egregious misconduct by a defendant, a defendant may forfeit the right to counsel." *Id.* at 535. While we reiterated in *Simpkins* that "[t]he purpose of the right to counsel 'is to assure that in any criminal prosecution, the accused shall not be left to his own devices in facing the prosecutorial forces of organized society,' " *id.* at 535–36 (quoting *Moran v. Burbine*, 475 U.S. 412, 430 (1986) (extraneity omitted)), nonetheless we also recognized that a defendant may in certain circumstances forfeit the right to counsel because there is a need to consider not only the constitutional

concerns of the defendant's right to counsel, but also a trial court's obligation to manage its proceedings because in forfeiture situations, "a defendant's actions frustrate the purpose of the right to counsel itself and prevent the trial court from moving the case forward." *Id.* at 536.

¶ 34        Misconduct by a criminal defendant which has been deemed sufficiently egregious to permit a trial court to conclude that the accused has forfeited the right to counsel occurs in two general circumstances. The first category includes a criminal defendant's display of aggressive, profane, or threatening behavior. *See, e.g.*, *id.* at 536–39 (first citing *State v. Montgomery*, 138 N.C. App. 521 (2000) (finding forfeiture where a defendant, *inter alia*, disrupted court proceedings with profanity and assaulted his attorney in court); then citing *State v. Brown*, 239 N.C. App. 510, 519 (2015) (finding forfeiture where a defendant "refus[ed] to answer whether he wanted assistance of counsel at three separate pretrial hearings [and] repeatedly and vigorously objected to the trial court's authority to proceed"); then citing *State v. Joiner*, 237 N.C. App. 513 (2014) (finding forfeiture where a defendant, *inter alia*, yelled obscenities in court, threatened the trial judge and a law enforcement officer, and otherwise behaved in a belligerent fashion); then citing *United States v. Leggett*, 162 F.3d 237 (3d Cir. 1998) (finding forfeiture where a defendant physically attacked and tried to seriously injure his counsel); and then citing *Gilchrist v. O'Keefe*, 260 F.3d 87 (2d Cir. 2001) (same)). This type of misconduct did not occur in the case at

bar in that defendant remained polite and calm throughout all of his trial court appearances and during defendant's interactions in trial proceedings with his various appointed attorneys.

¶ 35        The second broad type of behavior which can result in a criminal defendant's forfeiture of the constitutional right to counsel is an accused's display of conduct which constitutes a "[s]erious obstruction of the proceedings." *Simpkins*, 373 N.C. at 538. Examples of obstreperous actions which may justify a trial court's determination that a criminal defendant has forfeited the constitutional right to counsel include the alleged offender's refusal to permit a trial court to comply with the mandatory waiver colloquy set forth in N.C.G.S. § 15A-1242, "refus[al] to obtain counsel after multiple opportunities to do so, refus[al] to say whether he or she wishes to proceed with counsel, refus[al] to participate in the proceedings, or [the] continual hir[ing] and fir[ing of] counsel and significantly delay[ing] the proceedings." *Id.* at 538. In *Simpkins*, we further cited the decisions of the Court of Appeals in *Montgomery* and *Brown, inter alia*, as additional illustrations of this second mode of misconduct which can result in the forfeiture of counsel.

¶ 36        In *State v. Montgomery*, the lower appellate court considered potential constitutional error where, just as in the present case, a trial court failed to conduct the waiver of counsel colloquy with an accused pursuant to N.C.G.S. § 15A-1242 and went on to require the defendant to proceed to trial pro se with only the assistance of

standby counsel. 138 N.C. App. at 522–23. The defendant changed counsel three times over the span of thirteen months preceding his original trial date, then insisted on the scheduled date for commencement of his trial that his counsel be allowed to withdraw; however, the trial court denied counsel's motion to withdraw. On the following day of the trial proceedings, the defendant became disruptive and profane, resulting in the trial court's determination that the accused was in contempt of court and consequently would serve thirty days in jail. *Id.* Counsel for the defendant informed the trial court that the defendant had refused to allow key witnesses to meet with him, and the defendant subsequently was found to be in contempt of court at least twice more, including such a determination by the trial court after the defendant assaulted his attorney in court. *Id.* In *Simpkins*, we noted our agreement with the outcome which the Court of Appeals reached in *Montgomery* as we commented that the lower appellate court properly concluded that "[t]hese facts demonstrate forfeiture of the right to counsel because the defendant's actions totally undermine the purposes of the right itself by making representation impossible and seeking to prevent a trial from happening at all." *Simpkins*, 373 N.C. at 536.

¶ 37        In *State v. Brown* the defendant, "when asked whether he wanted a lawyer to represent him, . . . replied that he did not and, alternatively, when the trial court explained that [the] defendant would proceed without counsel, [the] defendant objected and stated he was not waiving any rights." 239 N.C. App. at 518. The

defendant maintained his stance of both refusing to accept court-appointed counsel and refusing to waive the right to counsel, while exacerbating the situation in open court by asserting challenges to the trial court's jurisdiction and its authority to proceed. *Id.* at 518–19. The Court of Appeals concluded in *Brown* that the defendant had forfeited his right to counsel because his behavior "amounted to willful obstruction and delay of trial proceedings and, therefore, defendant forfeited his right to counsel." *Id.* at 519. In *Simpkins* this Court observed that "[b]y refusing to make an election as to whether to proceed with counsel and by using the appointment and firing of counsel to delay the proceedings, the defendant in *Brown* completely frustrated his own right to assistance, warranting a finding of forfeiture." 373 N.C. at 537.

The defendant in *Simpkins* was arrested in the course of a traffic stop, during which he refused to produce his driver's license and vehicle registration after a law enforcement officer researched the vehicle's license plate and discovered that the defendant "had a suspended driver's license and a warrant out for his arrest." *State v. Simpkins*, 265 N.C. App. 325, 326 (2019), *aff'd*, 373 N.C. 530 (2020). "[D]uring the proceedings in district court, the court noted on an unsigned waiver of counsel form that Simpkins refused to respond to the court's inquiry. . . . [A] waiver of counsel form, signed by the trial judge, with a handwritten note indicat[ed] that Simpkins refused to sign the form." *Simpkins*, 373 N.C. at 532. After being convicted of resisting a

public officer, failing to carry a registration card, and driving with a revoked license, the defendant appealed to the superior court. *Id.* Throughout the superior court proceedings, the defendant challenged the court's jurisdiction, repeatedly spoke out of turn, argued with and questioned the trial court, and requested appointed counsel "not paid for by the State" but "later acquiescing when the court suggested he be appointed standby counsel." *Id.* at 539. Upon those circumstances, this Court concluded that "[defendant]'s conduct, while probably highly frustrating, was not so egregious that it frustrated the purposes of the right to counsel itself." *Id.*

**B. Application of precedent to defendant's case**

¶ 39    Defendant's behavior which is at issue in the present case is markedly different from the conduct exhibited by the respective defendants in *Montgomery* and *Brown*, as well as the actions displayed by the defendant in *Simpkins*, in that the demeanor of defendant here is far short of the degree of egregiousness demonstrated by the defendants in *Montgomery* and *Brown*, and even less than any disruption of the trial proceedings precipitated by the defendant in *Simpkins*, so as to constitute a forfeiture of the constitutional right to counsel. In all of his interactions with the trial court and throughout all of the trial proceedings, defendant did not use any profanity, make any threats, or act in an assaultive, aggressive, or discourteous manner. Defendant did not show any contempt for the trial court's authority; further, defendant incessantly extended deference and respect to the trial court and its determinations

regarding defendant's desire for answers to his questions and clarification of his confusion in light of defendant's limited education and understanding. In proceeding pro se, defendant's zealous representation of his own legal interests should not be conflated with disrespect for the trial court, the trial proceedings, the legal system, or the legal process. In light of defendant's limitations which he identified in open court, coupled with the seriousness of the criminal charges which he faced as the time of his trial neared, defendant operated within proper bounds during the trial proceedings to protect his rights and to advocate for himself.

¶ 40        Unfortunately, the dissent fixates upon our determination that defendant was polite and cooperative in defendant's interactions with the trial court in the dissent's attempt to cast our view of defendant's conduct as the dispositive feature which we have considered in concluding that defendant did not forfeit his right to counsel. The dissent's conveniently narrow focus to justify its position, however, serves to preclude its ability to properly see the broader scope of additional considerations which we realize have been established by appellate case law—namely, an indication of a defendant's knowing, intelligent, and voluntary waiver of the right to counsel; the performance of actions by a defendant to frustrate the trial court's management of its proceedings; and a serious obstruction of trial proceedings by a defendant—in order to fairly and correctly evaluate the articulated standard of the egregiousness of a criminal defendant's conduct with regard to the denial of the individual's protected

constitutional right to counsel. Despite the cited appellate case authorities which have addressed the particular facts and circumstances presented in these respective cases, the dissent would set the standard for forfeiture of counsel perilously low.

¶ 41    As we focus more specifically upon the trial court's determination that defendant "forfeited his right to have an attorney to represent him at this trial" due to having "obstructed and delayed these court proceedings" in that defendant asked the trial court "on the day of trial . . . for an attorney to represent him" after defendant had already requested that "[A]ttorneys [Wagoner and Evans] withdraw from representing him," we agree with the evaluation of this circumstance by the Court of Appeals that it did not constitute forfeiture of counsel by defendant. *Harvin*, 268 N.C. at 595. While the four of defendant's five court-appointed attorneys had been relieved of their responsibilities to defendant by the trial court during the pendency of his matter,[10] two of them withdrew of their own volition and the remaining two withdrew at defendant's request. The two defense attorneys who filed motions to withdraw as a result of their respective incompatible attorney-client relationships with defendant did so *not* because of defendant's willful tactics of obstruction and delay, as the trial court found, but in the determination of the Court of Appeals, "due to differences related to the *preparation* of [d]efendant's defense" rather than defendant's "refus[al]

---

[10] Defendant's standby trial counsel, who was defendant's fifth court-appointed attorney, remained in this role until the conclusion of the trial.

to *participate* in preparing a defense." *Harvin*, 268 N.C. App. at 595.

¶ 42     Once again, the dissent is riveted by one feature with which it becomes fascinated, to the exclusion of other impactful considerations. The dissent concentrates upon the trial court's findings of fact chronicling defendant's representation by court-appointed attorneys Mason, Nicely, Wagoner, Evans, and standby counsel Mediratta; emphasizes the great deference which is to be afforded to a trial court's findings of fact where constitutional matters such as the right to counsel are reviewed de novo; accentuates the binding nature on appeal of findings of fact if they are supported by competent evidence; and underscores the need for the findings of fact to support the conclusions of law. I agree with *all* of the recitations of these established, unassailable legal principles which the dissent gleans from appellate case decisions. Unfortunately, the dissent's fixation with the trial court's findings of fact which mentioned the five attorneys assigned to aid defendant have prompted the dissent to neglect the importance of the reality that the trial court's conclusions of law only identified the relevance of two court-appointed attorneys for defendant—Wagoner and Evans—in the trial court's determination

> that based upon the defendant's actions from the time that Mr. Merritt Wagoner was appointed to represent him on May 12, 2017; Mr. Shawn Evans was appointed to represent him on September 28, 2017, the defendant requesting that both of these attorneys withdraw from representing him, finds that the defendant has forfeited his right to have an attorney to represent him at this trial. . . .

*Id.* at 589. In our de novo review of this case's facts and circumstances, the trial court's unequivocal conclusion of law that defendant's request that two court-appointed attorneys withdraw from representing him constituted forfeiture of counsel does not satisfy this Court's determination in *Simpkins* that "[i]f a defendant . . . *continually* hires and fires counsel and significantly delays the proceedings, then a trial court may appropriately determine that the defendant is attempting to obstruct the proceedings and prevent them from coming to completion." *Simpkins*, 373 N.C. at 538 (emphasis added). Although the dissent attempts to inflate the importance of the foundational findings of fact which mention defendant's five court-appointed attorneys and endeavors to deflate the significance of the dispositional conclusions of law which expressly based defendant's forfeiture of counsel upon the withdrawal of two court-appointed attorneys, we recognize that the trial court's conclusions of law cannot be discounted or ignored, and must be evaluated de novo here in conjunction with prevailing precedent.

¶ 43      In sum, defendant's first two changes of counsel, which occurred in his case over the course of two-and-one-half years between his arrest on 9 February 2015 and Wagoner's withdrawal from the case on 28 September 2017, were totally unrelated to defendant's actions. After the withdrawal of his first two appointed attorneys for their own individual respective reasons, in the subsequent two-and-one-half month period from 28 September 2017 to 12 December 2017, defendant requested the withdrawal

of two other appointed attorneys. On 28 December 2017, the trial court completed the statutory waiver inquiry and defendant agreed to represent himself. Afterwards, through three additional hearings and until his trial began on 23 April 2018, defendant, while remaining cooperative and polite, continued to represent himself zealously while attempting to preserve his legal rights and pursue his legal strategies as he attempted to prepare for trial.

¶ 44    We conclude that defendant's actions, up to and including the day on which his trial was scheduled to begin, did not demonstrate the type or level of obstructive and dilatory behavior which allowed the trial court here to permissibly conclude that defendant had forfeited the right to counsel. During the course of his case, defendant did not ever display aggressive, profane, or threatening behavior. Likewise, defendant did not ever act in a manner which constituted "[s]erious obstruction of the proceedings" as exemplified in *Montgomery* and *Brown*, and as further discussed in *Simpkins*. *Simpkins*, 373 N.C. at 538. On the other hand, defendant engaged courteously and constructively with the relevant processes regarding the engagement and withdrawal of appointed counsel throughout his case, complied responsibly with the waiver colloquy undertaken by the trial court on 28 December 2017, and, shortly thereafter, expressly and repeatedly requested the assistance of counsel at trial on the basis that defendant did not consider himself to be in a position to proceed effectively pro se in light of the numerous challenges that he deferentially, though

tenaciously, related to the trial court.

### III.     Conclusion

Defendant did not engage in the type of egregious misconduct that would permit the trial court to deprive defendant of his constitutional right to counsel; therefore, defendant is entitled to a new trial. Accordingly, we affirm the decision of the Court of Appeals which vacated the judgments entered by the trial court upon defendant's convictions and remand this case to the Court of Appeals for further remand to the trial court for a new trial on all charges.

AFFIRMED AND REMANDED.

Justice BERGER dissenting.

¶ 46     Defendant's trial was scheduled to begin on January 28, 2018. On December 8, 2017, Shawn R. Evans, defendant's attorney filed a motion to withdraw. Within the motion, Mr. Evans explained the following about his reasons for withdrawing as counsel: "[d]efendant verbally fired the undersigned counsel on December 8, 2017"; [d]efendant has refused to follow or even consider the advice of counsel and will not communicate with counsel about his case or defense"; "[d]efendant also refused to accept written correspondence from Counsel"; and "[c]ommunication has become impossible." Thus, "there is nothing counsel can do to rehabilitate the attorney client relationship, despite efforts to do the same."

¶ 47     Judge Ebern T. Watson III heard Mr. Evans's motion to withdraw on December 12, 2017. Defendant informed the court that he would like to represent himself but would like "assistance, perhaps." Judge Watson described the role of standby counsel to defendant and stated, "[A]t any point in time, if you chose to then request standby counsel to be made first chair, then that would put you in the position to have to speak to another judge about that at the appropriate time."

¶ 48     Defendant asked the court to appoint another attorney besides Mr. Evans as standby counsel, and Judge Watson appointed Paul Mediratta. Defendant waived his right to counsel in open court; a signed waiver of counsel dated December 28, 2017, is in the record. As a result, defendant's trial was delayed.

¶ 49        On April 3, 2018, Judge Phyllis M. Gorham heard defendant's motion to continue. The court denied the motion, and the court announced that defendant's trial would begin on April 23. During the April 3 hearing, Mr. Mediratta suggested that if defendant wanted him to take over as first chair, he would need to know to "prepare in a different way." Judge Gorham stated, "My understanding from [defendant] today is that he still intends to represent himself." Defendant did not say anything to the contrary.

¶ 50        On the day of trial, April 23, 2018, defendant requested new standby counsel, stating that he "would like to address the situation of ineffective assistance of counsel." Judge Gorham informed defendant that he could not assert ineffective assistance of counsel, as he only had standby counsel and did not have an attorney representing him. Defendant then explained to Judge Gorham that he was "asking for basically someone to replace [Mr. Mediratta] as standby counsel to provide [him] with assistance, someone adequate." Defendant also explained to the trial court that he was "going to try to proceed without [Mr. Mediratta]," but defendant felt "like [he couldn't] adequately prepare . . . considering the limited time that [he] was given." Judge Gorham then began and completed the colloquy required under N.C. Gen. Stat. § 15A-1242. When the trial court asked Mr. Mediratta whether he was ready to proceed with the case, he responded as follows:

> I am not. Your Honor, I'm appearing as standby counsel.
> [Defendant] has not been communicating, he is not willing

to work with me. Even with the discovery, we've had serious communication problems. I am not prepared to take this case to trial today, Your Honor.

¶ 51      Judge Gorham requested that the State have all the attorneys who were previously appointed to represent defendant appear in court. They all appeared and provided testimony regarding their roles in the case, their opinion of defendant's competency, and their reasons for withdrawing. The court also heard from the State and the defendant on the issues of capacity to proceed and forfeiture of counsel. Defendant stated that he did not believe he could provide himself with "the representation that's required by law."

¶ 52      On capacity to proceed, the court made findings that defendant was competent and that he had "been representing himself in a rational and reasonable manner." The court then made the following findings of fact on the issue of forfeiture:

> Now as to the defendant's request on the day of trial for an attorney, that on February 9, 2015, the Court appointed Bruce Mason through the Public Defender who requested Mr. Mason to represent the defendant. Mr. Mason represented the defendant from February of 2015 to July 25th of 2016. Mr. Mason testified that he had to withdraw because he had other matters that were pressing, and that Mr. Nicely substituted to represent the defendant on or about July 25, 2016. . . .
>
> Mr. Nicely testified and the record reflects that he was appointed on or about July 25, 2016, until May 12, 2017, when Merritt Wagoner was appointed by the Court to represent the defendant. Mr. Nicely testified that he represented him up until the time that he went to work in

the Brunswick County District Attorney's Office. . . .

On or about May 12, 2017, the Court appointed Merritt Wagoner to represent the defendant and he represented the defendant until on or about September 28, 2017. Mr. Wagoner testified that he filed a motion to withdraw from the defendant's case at the defendant's request and was allowed to withdraw from the case on September 28, 2017. . . .

That on or about September 28, 2017, the Court allowed Mr. Wagoner to withdraw. The Court appointed Shawn Robert Evans to represent the defendant. Mr. Evans represented the defendant until he was removed from the case December 12, 2017.

. . . .

That on December 12, 2017, Mr. Evans filed a motion to withdraw as counsel for the defendant at the defendant's request. On December 12, 2017, the defendant at that time informed the Court that he wished to represent himself. Judge Watson at that time—the defendant at that time signed a waiver of his right to all counsel. Judge Watson at that time appointed Paul Mediratta as standby counsel.

That on December 28, 2017, this defendant was in front of this judge. At that time, he still intended to waive his right to counsel. This court advised defendant of his waiver of counsel. At that time he still intended to represent himself and he signed a waiver of his right to counsel.

At that time he did not wish to have an attorney, he wished to represent himself. That the defendant has had multiple opportunities to ask the Court for an attorney to represent him on his cases. That on January 28, 2018, the defendant was before this Court and at that time if he wished to have an attorney to represent him, he had the opportunity to ask the Court for an attorney and he did not.

On March 26, 2018, he was before Judge Willey and at that time he had an opportunity to inform the Court of his—to ask the Court for an attorney. He did not.

On April 3, 2018, the defendant was again before this Court. At that time, he had an opportunity to ask the Court for an attorney, he did not.

¶ 53 Based on these findings of fact, the trial court ultimately determined that defendant forfeited his right to counsel, explaining as follows:

The Court finds that he had no good cause as of today, the day of trial, to ask this Court for an attorney to represent him. That in fact this Court believes that based upon the defendant's actions from the time that Mr. Merritt Wagoner was appointed to represent him on May 12, 2017; Mr. Shawn Evans was appointed to represent him on September 28, 2017, the defendant requesting that both of these attorneys withdraw from representing him, finds that the defendant has forfeited his right to have an attorney to represent him at this trial; that his actions have been willful and that he has obstructed and delayed these court proceedings.

Therefore[,] the Court finds that the defendant has forfeited his right to have an attorney represent him at this trial. . . .

¶ 54 In sum, defendant's third attorney was appointed on May 12, 2017, and subsequently withdrew in September of that year. His fourth attorney was appointed before he withdrew less than three months later in December, as the January trial loomed. Still, defendant's issues with counsel persisted; on April 23, 2018, defendant's

trial date, defendant expressed his displeasure with standby counsel and sought to have that attorney replaced, which would have further delayed trial.

## I.    Analysis

¶ 55        While constitutional matters, such as the right to counsel, are reviewed de novo, a trial court's findings of fact are afforded great deference.  This Court has stated that "[a]n appellate court reviews conclusions of law pertaining to a constitutional matter de novo.  The trial court's findings of fact are binding on appeal if they are supported by competent evidence, and they must ultimately support the trial court's conclusions of law."  *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (cleaned up).

¶ 56        In *State v. Simpkins*, and as the majority does here as well, the Court employed a de novo standard of review, substituting its judgment for that of the trial court.  373 N.C. 530, 533, 838 S.E.2d 439, 444 (2020).  Yet, in footnote 3 of *Simpkins*, the Court recognized that in that case the trial court never concluded that defendant had forfeited his right to counsel; however, we explained that "[i]f it had, and had made findings of fact supporting that conclusion, then those findings would be entitled to deference."  *Id.* at 533 n.3, 838 S.E.2d at 444 n.3 (citing *Bowditch*, 364 N.C. at 340, 700 S.E.2d at 5).

¶ 57        Both the majority and dissenting opinions in *Simpkins* showed concern for the deference given to trial courts.  Dissenting in *Simpkins*, then-Justice Newby, joined

by Justice Morgan, pointed out that "the majority finds facts from a cold record to reverse the trial court's determination," and opined that "[t]he majority's decision undermines the trial court's fundamental authority over the courtroom." *Simpkins*, 373 N.C. at 542, 838 S.E.2d at 450 (Newby, J., dissenting). Further, the dissent explained that "[o]nly the trial courts could evaluate defendant's tone of voice, emotions, body language, and other non-verbal communication cues accompanying his words to assess his sincerity . . . . The trial court could truly understand defendant's actions to know when to protect the court proceedings from undue disruption and delay." *Id.* at 545, 838 S.E.2d at 452 (Newby, J., dissenting).

Here, unlike the trial court in *Simpkins*, the trial court made findings of fact which are entitled to deference. The trial court made appropriate findings that defendant "obstructed and delayed" the court's proceedings. In its findings, the trial court listed numerous times when defendant could have had an attorney represent him rather than use standby counsel and did not, while also detailing the times defendant asked his attorneys to withdraw. The trial court determined these behaviors to be willful and obstructive. These findings were supported by the evidence in the record and are entitled to deference by this Court. Rather than defer to the trial court, the majority makes findings from the record that defendant was "polite" and "cooperative" to conclude that defendant did not forfeit his right to counsel.

¶ 59    The Sixth Amendment and Fourteenth Amendment to the United States Constitution and article I of the North Carolina Constitution guarantee a criminal defendant's right to counsel.  There are two circumstances where "a defendant may no longer have the right to be represented by counsel": (1) waiver and (2) forfeiture. *State v. Blakeney*, 245 N.C. App. 452, 460, 782 S.E.2d 88, 93 (2016); *see also State v. Thomas*, 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992); *Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449.

¶ 60    A defendant may waive his Sixth Amendment right to counsel, but "[w]aiver of the right to counsel and election to proceed pro se must be expressed clearly and unequivocally." *Blakeney*, 245 N.C. App. at 459, 782 S.E.2d at 93 (cleaned up).  "Once a defendant clearly and unequivocally states that he wants to proceed *pro se*, the trial court, to satisfy constitutional standards, must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel." *Thomas*, 331 N.C. at 674, 417 S.E.2d at 476.  "In order to determine whether the waiver meets that standard, the trial court must conduct a thorough inquiry." *Id.*  The inquiry required by N.C.G.S. § 15A-1242 satisfies this constitutional requirement. *Id.*

¶ 61    Forfeiture is the second circumstance in which a defendant may lose his right to Sixth Amendment counsel. *Blakeney*, 245 N.C. App. at 460, 782 S.E.2d at 93. "Unlike waiver, which requires a knowing and intentional relinquishment of a known

right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 69 (2000) (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995)).

In *Simpkins*, this Court held that "in situations evincing egregious misconduct by a defendant, a defendant may forfeit the right to counsel." 373 N.C. at 535, 838 S.E.2d at 446. Further, this Court recognized that

> in rare circumstances a defendant's actions frustrate the purpose of the right to counsel itself and prevent the trial court from moving the case forward. In such circumstances, a defendant may be deemed to have forfeited the right to counsel because, by his or her own actions, the defendant has totally frustrated that right. If one purpose of the right to counsel is to justify reliance on the outcome of the proceeding, then totally frustrating the ability of the trial court to reach an outcome thwarts the purpose of the right to counsel.

*Id.* at 536, 838 S.E.2d at 446 (cleaned up). The Court also noted that

> [i]f a defendant . . . continually hires and fires counsel and significantly delays the proceedings, then a trial court may appropriately determine that the defendant is attempting to obstruct the proceedings and prevent them from coming to completion. In that circumstance, the defendant's obstructionist actions completely undermine the purpose of the right to counsel.

*Id.* at 538, 838 S.E.2d at 447 (emphases added).

In this case, defendant forfeited his right to counsel by engaging in "egregious

misconduct" which "frustrat[ed] the ability of the trial court to reach an outcome" by repeatedly acquiring and disposing of counsel. *See id.* at 536–36, 838 S.E.2d at 447. Defendant asked his third attorney to withdraw. Then, as the trial date drew near, defendant fired his fourth attorney. Mr. Evans's motion to withdraw paints a different picture from what the majority finds to be a "cooperative" defendant. Finally, as the new date for the trial approached, defendant challenged the assistance he received from standby counsel and sought to have standby counsel replaced. He waived counsel, and then seemed to request counsel again.

¶ 64        As his trial approached, defendant attempted to delay the proceedings by having his counsel removed and replaced. Defendant's "obstructionist actions completely undermine[d] the purpose of the right to counsel"—rather than utilizing counsel to prepare for trial, defendant refused to engage with his attorneys and hired and fired counsel to delay his trial. *See id.* at 538, 838 S.E.2d at 447. As the trial court determined, defendant's conduct rises to the level of egregious conduct that should result in a forfeiture of the right to counsel.

¶ 65        In concluding that defendant did not forfeit his right to counsel, the majority divides forfeiture into two categories, ultimately concluding that neither apply. *Supra* ¶ 34. The first category includes "aggressive, profane, or threatening misbehavior." *Supra* ¶ 34. In this case, because "defendant remained polite and calm throughout all of his . . . appearances and . . . interactions," this category of forfeiture

does not apply. *Supra* ¶ 34. The majority's second category requires that defendant seriously obstruct the proceedings. *Supra* ¶ 35 (quoting *Simpkins*, 373 N.C. at 538, 838 S.E.2d at 447). To seriously obstruct proceedings, according to the majority, defendant could engage in any of the following behaviors: refusing to permit a trial court to comply with the mandatory waiver colloquy of N.C.G.S. § 15A-1242; refusing to obtain counsel after multiple opportunities to do so; refusing to participate in the proceedings;[1] or continually hiring and firing counsel which significantly delays the proceedings. *Supra* ¶ 35.

¶ 66        The majority ultimately concludes that defendant's conduct here did not rise to the level of forfeiture under these criteria despite facts in the record that defendant delayed the resolution of his matter by refusing to engage with counsel and hiring and firing counsel.

¶ 67        The majority argues that defendant's conduct is "far short" of being so egregious that it obstructed the trial court and constituted a forfeiture of his constitutional right to counsel. *Supra* ¶ 39. The majority supports this conclusion by pointing out that "defendant did not use profanity, make any threats, or act out in an assaultive, aggressive, or discourteous manner" in court. *Supra* ¶ 39.

¶ 68        However, a defendant's civility in the courtroom is not the gatekeeper for

---

[1] One could argue that the failure of a defendant to engage with counsel appropriately in preparing a defense could constitute a refusal to participate in the proceedings.

forfeiture of counsel as a matter of law. One need not use profanity, threaten anyone, act aggressively, become physically violent with counsel, or act discourteously to delay a trial and frustrate the judicial process. This Court embarks on an unwise path if a defendant may engage in delay tactics so long as he refrains from foul language, violence, and threats of violence in front of a judge.

¶ 69        Next, the majority looks at this case from inception to conclusion, determining that defendant's first two attorneys withdrew for reasons beyond defendant's control. The majority finds that thirty months of the delay were not attributable to defendant. However, the majority brushes past the fact that "[a]fter the withdrawal of his first two appointed attorneys . . . in the subsequent two and one-half month period from 28 September 2017 to 12 December 2017, defendant requested the withdrawal of two other appointed attorneys." *Supra* ¶ 43.

¶ 70        The majority again points out the civility of defendant in noting that from December 28, 2017 to April 23, 2018, defendant remained "cooperative and polite," while "attempting to preserve his legal rights and to pursue his legal strategies as he attempted to prepare for trial." *Supra* ¶ 43. Further, the majority asserts that "defendant engaged courteously and constructively" with the trial court and thus his behavior did not amount to egregious conduct sufficient to forfeit a right to counsel. *Supra* ¶ 44.

¶ 71        Overall, the majority's reliance on its finding of the civility of defendant is

misplaced.  This focus puts trial courts in an impossible position. Even when a trial court makes findings that a defendant acted willfully and delayed the resolution of his case, as the trial court did here, this Court engages in fact finding from a cold record to conclude that defendant was "polite" and thus did not forfeit counsel.  Trial courts cannot be expected to know when enough is enough and are left to wonder how "rude" a defendant must be before he may be found to have forfeited counsel.

## II.    Conclusion

For this Court to conclude from a cold record that defendant was "polite" and "courteous," and thus entitled to continue to delay his trial by hiring and firing counsel strikes the wrong balance between the rights of criminal defendants and judicial efficiency.  While criminal defendants enjoy a right to counsel, they also have the responsibility to cooperate with counsel and not obstruct the judicial process.  As the trial court determined, defendant's conduct was sufficiently egregious to forfeit counsel, and I respectfully dissent.

Chief Justice NEWBY and Justice BARRINGER join in this dissenting opinion.